UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
STEPHANIE E. LOMAX,                                                 :    09-CV-2321(ARR)(LB)
                                                                    :
                              Plaintiff,                            :
      -against-                                                     :    NOT FOR PRINT OR
                                                                    :    ELECTRONIC
AEGIS FUNDING CORPORATION, MORTGAGE                                 :    PUBLICATION
ELECTRONIC REGISTRATION SYSTEMS, INC. P.O.                          :
BOX 2026, FLINT, MI. 48501,                                         :    ORDER
                                                                    :
                              Defendants.                           X
-------------------------------------------------------------------

ROSS, United States District Judge:

Plaintiff Stephanie Lomax ("Lomax"), proceeding pro se, asserts various state law claims against defendants Aegis Funding Corporation ("Aegis") and Mortgage Electronic Registration Systems ("MERS") stemming from three separate mortgages on plaintiff's Virginia Beach property. Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has filed no opposition to the motion.

## BACKGROUND

From 2003 to 2005, Lomax, a resident of New York, applied for and received three separate mortgages on a property in Virginia Beach, Virginia. (Compl. Ex. A, Ex. B, Ex. C.) The first mortgage, valued at $67,000, was signed on June 3, 2003.[1] MERS is the named beneficiary and Aegis is the lender on this mortgage. (Compl. Ex. A.) The second mortgage was signed on July 8, 2004 for $360,000. Macquarie Bank ("Macquarie"), not named as a defendant in this case, was the lender. (Compl. Ex. B.) The third and final mortgage named

---

1 Plaintiff has appended three deeds of trust to her complaint. For the sake of simplicity, this opinion often refers to the individual mortgages rather than the deeds of trust.

1

MERS as the beneficiary and IndyMac Bank, also not a named defendant, as the lender. This mortgage was signed on December 23, 2005 for the amount of $440,000. (Compl. Ex. C.)

Plaintiff characterizes the Virginia Beach property as one of "several investment properties," but notes that in the current economic climate she is unable to make the required monthly payments. (Compl. ¶ 20.) She adds that this is due, in part, to the fact that the tenants to whom she rents the property are "not . . . able to pay the rent on time each month."[2] (Compl. ¶ 20.) Plaintiff also asserts that she is unable to make the necessary mortgage payments because defendants inflated the cost of her "mortgage on the basis of fraudulent means and miscalculations." (Compl. ¶ 5.) In addition to claiming "predatory" lending and mortgage fraud, Lomax also asserts a number of deficiencies with the assignment of the second deed by Macquarie. (Compl. ¶¶ 10, 15, 26, 28).

Since these mortgages were first issued, the relevant parties changed in key respects. In 2005, Macquarie assigned its interest in the second mortgage to Wachovia Bank.[3] (Compl. Ex. B) ("Notice of Assignment of Deed of Trust"). On July 11, 2008, the Office of Thrift Supervision closed IndyMac Bank and appointed the FDIC as Receiver, creating "IndyMac Federal Bank, F.S.B." (Johnson-Seck Decl. ¶ 3.) Finally, on March 19, 2009, OneWest Bank ("OneWest") purchased certain assets held by IndyMac Federal Bank, including the $440,000 mortgage secured by Lomax's Virginia Beach property. (Johnson-Seck Decl. ¶ 4.) As a result, OneWest has an interest in this litigation similar to Aegis and MERS, the named defendants.

OneWest, holding an interest in plaintiff's third mortgage but not named in the complaint, now moves to dismiss the complaint under Rule 12(b)(6) as it relates to all

---

2 OneWest Bank, in bringing this motion to dismiss, correctly notes that while plaintiff admits to using the property as a rental property, the riders attached to the deeds of trust specifically state that the property is to be used only as a second home, not as a rental. (See Compl. Ex. B, Ex. C.) Plaintiff's admission is immaterial to this motion.
3 Wachovia Bank, like Macquarie, its predecessor in interest on the second mortgage, was not named as a party to this litigation. (See Compl. at 1.)

defendants. The arguments presented in the motion to dismiss apply equally to OneWest, Aegis, and MERS and therefore, this court will examine plaintiff's claims as they relate both to OneWest and to the named defendants.

## APPLICABLE STANDARDS

A. <u>Rule 12(b)(6) Dismissal Standard</u>

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a complaint must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

In adjudicating a motion to dismiss, the court assumes the truth of all factual allegations in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. <u>See, e.g.</u>, <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007); <u>Global Network Commc'ns, Inc. v. City of N.Y.</u>, 458 F.3d 150, 154 (2d Cir. 2006). However, "[w]hile legal conclusions can provide the framework of a complaint," neither "legal conclusions" nor "conclusory statements" are alone sufficient, nor are such statements entitled to a presumption of truth. <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009). Thus, in evaluating motions to dismiss pursuant to Rule 12(b)(6), a court must identify a complaint's non-conclusory factual allegations and then determine whether those allegations, taken as true and construed in the plaintiff's favor, "plausibly give rise to an entitlement to relief." <u>Id.</u>

Plausibility, in this context, does not refer to the likelihood of success on the merits of the legal claim, but asks whether a complaint's "[f]actual allegations . . . [are] enough to raise a right

to relief above the speculative level." Twombly, 550 U.S. at 555; see also Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Twombly, 550 U.S. at 570 (Thus, if a plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed."). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

B.   Dismissal of Pro Se Complaints

Complaints filed by pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). "When considering motions to dismiss a pro se complaint, . . . 'courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s].'" Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)) (alterations in original). Even after Twombly and Iqbal, pro se complaints are entitled to liberal construction when they "contain sufficient factual content to allow the district court 'to draw the reasonable inference that the defendant[s] [were] liable for the misconduct alleged.'" Schwanborn v. Cnty. of Nassau, No. 08-4753-pr, 2009 WL 3199001, at *1 (2d Cir. Oct. 7, 2009) (quoting Iqbal, 129 S. Ct. at 1949)). Yet when evaluating such a complaint, "the [c]ourt is also aware that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." Iwachiw v. N.Y.City Bd. of Educ., 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002) (internal quotation marks omitted); see also Atherton v. D.C. Office of

4

the Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("[E]ven a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'") (quoting Iqbal, 129 S. Ct. at 1950).

C. Conflicts of Law

In this case, Lomax asserts exclusively state common law claims. Because jurisdiction here is based on diversity of citizenship, this court must apply the choice of law rules of New York, the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999). Under New York's choice of law rules, the first question a court must address is whether a choice of law analysis would make a difference – "whether there is an actual conflict between the laws of the jurisdictions involved." In re Allstate Ins. Co., 613 N.E.2d 936, 937 (N.Y. 1993). Only where the relevant states' laws provide different substantive rules must a conflict of laws analysis actually be preformed. See, e.g., Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 14 (2d Cir. 1996) (finding conflict where only Ohio law allowed for consideration of loss of society for damages purposes); Bader v. Purdom, 841 F.2d 38, 39-40 (2d Cir. 1988) (finding conflict concerning availability of recovery against a parent for negligent supervision). Where the laws at issue are not in actual conflict, the court applies New York law. See Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998) ("It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis."); Simon v. Philip Morris Inc., 124 F. Supp. 2d 46, 71 (E.D.N.Y. 2000) ("A court is free to bypass the choice of law analysis and apply New York law in the absence of a material conflict.").

**DISCUSSION**

Lomax raises several tort and contract claims against defendants. In measuring these

claims against the federal pleading requirements, it ultimately is of no consequence whether this court applies Virginia or New York law. See Simon, 124 F. Supp. 2d at 71. Given the level of generality at which plaintiff's allegations are framed, no matter which substantive law is applied, plaintiff has failed to state claims entitling her to relief.

1. First Claim: Negligent Assignment

This claim asserts that defendants "negligently omitted significant documentation and other supportive evidence" in assigning the deed of trust. (Compl. ¶ 15.) A fundamental shortcoming of this claim, and the complaint more generally, is the fact that neither the named defendants, nor OneWest, were in any way involved in the allegedly deficient assignment of the second mortgage. This is not a judgment about the merits of plaintiff's assignment claim, but a natural conclusion from plaintiff's own exhibits, which demonstrate that the second mortgage was assigned from Macquarie to Wachovia Bank. (See Compl. Ex. B.) Aegis, MERS, and OneWest were simply not involved in the transaction. Thus, none of Lomax's allegations regarding the assignment can state a claim against Aegis, MERS, or OneWest.

2. Second Claim: Wantonness

Lomax's second claim for "wantonness" alleges that defendants "consciously and intentionally" "conspir[ed] to issue [her] a high cost loan" without regard to whether she would be able to repay the loan amount. (Compl. ¶ 19.) Plaintiff states that these "wicked" actions were intended to "increase the profits for the lending bank" and "to cause economical injury and financial lost [sic.] of equity to [plaintiff]." (Compl. ¶ 23.)

Plaintiff's allegations sound like a claim for tortious interference with the mortgage contracts. See, e.g., Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985) (stating the basic elements of tortious interference with contract under Virginia law); Kay v. Sussel, 199 N.Y.S.2d

6

180, 181 (Sup. Ct. 1960) (recognizing cause of action for conspiracy to induce breach of contract); Louis C. Moser & Co. v. Kremer, 80 N.Y.S.2d 199, 201 (App. Term 1948) (same). Yet plaintiff has not made any allegations as to how defendants inflated the price of her mortgages. For example, she has not cited any "false or misleading" representations that may have caused her to enter these onerous mortgages in the first place. See Teller v. Bill Hayes, Ltd., 630 N.Y.S.2d 769 (App. Div. 1995). Without allegations of particular wrongful acts that furthered the conspiracy and caused injury, this cause of action cannot proceed. See Senrow Concessions, Inc. v. Shelton Properties, Inc., 178 N.E.2d 726, 729 (N.Y. 1961).

The same result is compelled if this cause of action is interpreted as a claim for wanton negligence or willful misconduct. While the alleged outline of events may provide a rough framework for a claim, the complete lack of specific factual allegations do not raise the claim "above the speculative level." See Twombly, 550 U.S. at 555. Though there may be a "sheer possibility" that defendants were involved in some sort of predatory lending, the complaint provides no basis for finding the requisite plausibility. See Iqbal, 129 S. Ct. at 1949.

The same result is also compelled if plaintiff's claim is construed as a claim under state banking statutes, although plaintiff makes no reference to such statutes. Both New York and Virginia laws protect against certain forms of predatory lending practices in an attempt to limit "high-cost home loans." See N.Y. Banking Law § 6-*l* (McKinney 2010)[4]; Va. Code Ann. § 6.1-422 (2010). However, plaintiff has not noted any particular practice that defendants engaged in – such as "flipping" – which could be construed as a prohibited act. Plaintiff has not even alleged any facts from which the court might infer such practices. Moreover, the interest rates on the Virginia Beach mortgages do not exceed the maximum contractual rates permitted by

---

4 However, Lomax cannot seek protection under these laws because the property in question is not located in New York. N.Y. Banking Law § 6-*l*.1(e)(v) (McKinney 2010.

7

statute. Compare Compl. Ex. C (6.75 percent rate), with N.Y. Banking Law § 14-a(1) (McKinney 2010) (16 percent maximum) and Va. Code Ann. § 6.1-330.55 (2010) (12 percent maximum).

At the conclusion of this claim, plaintiff, in passing, adds an allegation of "trespass", though her description sounds closer to common law nuisance. She notes that she "ha[s] been deprived of the peaceful enjoyment of [her] property" as a result of defendants' actions. (Compl. ¶ 24.) Whether this claim was meant to state trespass or nuisance, the allegations are insufficient to state a claim. A claim for trespass must allege some "affirmative act constituting or resulting in an intentional intrusion upon [plaintiff's] property." See Stage Club Corp. v. West Realty Co., 622 N.Y.S.2d 948, 951 (App. Div. 1995). Private nuisance is a substantial and unreasonable interference with the use or enjoyment of a land owner or land possessor's property interests. See Restatement (Second) of Torts § 821D ("A private nuisance is a nontrespassory invasion of another's interest in the private use an enjoyment of land"). According to the Virginia Supreme Court, nuisance "embraces everything that endangers life or health, or obstructs the reasonable and comfortable use of property." See Bowers v. Westvaco Corp., 419 S.E.2d 661, 665 (Va. 1992) (adopting Restatement § 821D). Plaintiff has alleged absolutely no facts to sustain either a trespass or a nuisance claim. It is not sufficient to simply assert that a trespass has occurred; such a limited pleading is precisely the type of "legal conclusion[ ]" or "conclusory statement[ ]" that is not entitled to a presumption of truth and is insufficient to survive a motion to dismiss. See Iqbal, 129 S. Ct. at 1949-50.

3. Third Claim: Abuse of the Mortgage Process

Plaintiff's third claim is for abuse of the mortgage process. Lomax alleges that "defendants . . . should have known that the assignment of mortgage and or the assignment of

8

deed of trust was defective on its face." (Compl. ¶ 26.) She continues to allege that defendants "participated in mortgage fraud" and issued a high cost predatory loan. These allegations have been largely dealt with above. Without additional specifics, simply titling the cause of action differently does not produce a different result.

New York defines abuse of process "as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process." Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., 343 N.E.2d 278, 280 (N.Y. 1975). In order to state an abuse of process claim under New York law, plaintiff must, among other things, allege that "the person activating the process [was] moved by a purpose to do harm without . . . excuse or justification." Id. at 283. This motive requires an improper purpose that is "collateral" to the object of the normal process and that "offends the spirit of the legal procedure itself." Id. at 281, 283; see also Hauser v. Bartow, 7 N.E.2d 268, 269 (N.Y. 1937) ("The gist of the action for abuse of process lies in the improper use of process after it is issued.") Similarly, "[f]or an abuse of process claim [in Virginia] to survive a challenge by demurrer, one must plead: '(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings.'" Ely v. Whitlock, 385 S.E.2d 893, 897 (Va. 1989) (quoting Donohoe Constr. v. Mount Vernon Assoc., 369 S.E.2d 857, 862 (Va. 1988)).

Here, Lomax has alleged no facts that would indicate the mortgage process was used for ulterior motives. Cf. Key Bank of N. N.Y., N.A. v. Lake Placid Co., 479 N.Y.S.2d 862, 867 (App. Div. 1984) ("[P]laintiff held mortgages which became in default and this [foreclosure] action is the proper legal means to litigate such matter."). Moreover, abuse of the process under Virginia law requires wrongful use of the process after it was issued. See Triangle Auto Auction

v. Cash, 380 S.E.2d 649, 650 (Va. 1989). No such allegations were made here. The shortcomings of plaintiff's allegations are all the more critical given that she alleges a fraud, which, under Rule 9(b), requires that the claimant "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Plaintiff's conclusory allegations are wholly insufficient to state a claim for abuse of the mortgage process.

4. Fourth Claim: Slander of Title

In plaintiff's cause of action for slander of title, she does little more than reiterate her claims of "mortgage fraud" and issuance of a "high cost loan." (See Compl. ¶ 30.)

Under Virginia law, an action for slander of title requires "(1) the uttering and publication of the slanderous words by the defendant, (2) the falsity of the words, (3) malice, (4) and special damages." Bison Bldg. Co., LLC v. Brown, 70 Va. Cir. 348, 355 (Cir. Ct. 2006). Similarly, under New York law, an action for slander of title requires the false disparagement of the title of another's property, resulting in "special damages." See, e.g., Rosenbaum v. City of N.Y., 861 N.E.2d 43, 48-49 (N.Y. 2006). Plaintiff must also allege that the defendant acted with "malice" in making such false statements with respect to the title. See, e.g., Kirkland v. Am. Title Ins. Co., 692 F. Supp. 153, 157 (E.D.N.Y. 1988) (applying New York law). Lomax has failed to allege anything resembling a slanderous utterance or publication. Nor has she alleged facts that might support an inference of malice or special damages. Failing in all of these elements, the claim of slander of title is dismissed.

5. Fifth Claim: Wrongful Mortgage

Plaintiff's fifth claim for "wrongful mortgage" adds no new allegations to what has been discussed above. Given this overlap, plaintiff's claim is dismissed for failure to state a claim.

6. Sixth Claim: Unjust Enrichment

Plaintiff's penultimate claim is for unjust enrichment. An unjust enrichment claim is "based on . . . equitable principles that a person shall not be allowed to enrich himself unjustly at expense of another." Waldman v. Englishtown Sportswear, Ltd., 460 N.Y.S.2d 552, 556 (App. Div. 1983); see also Kern v. Freed Company, Inc., 299 S.E.2d 363, 365 (Va. 1983) (Virginia law on unjust enrichment is based on the equitable principle that "a man shall not be allowed to enrich himself unjustly at the expense of another.").

Under both Virginia and New York law, a claim for unjust enrichment, sounding in quasi-contract, is not normally appropriate when a written contract on the same subject exists. See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.") (internal citations omitted); Ellis & Myers Lumber Co. v. Hubbard, 96 S.E. 754, 760 (Va. 1918) (Where there is a legally enforceable, valid, and express contract between the parties, the "law will not imply a contract in contravention thereof."). Therefore, insofar as this claim is based on the terms of the mortgage contract itself, Lomax cannot bring a claim in quasi-contract for unjust enrichment. See, e.g., Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., 448 F.3d 573, 587 (2d Cir. 2006) ("[U]nder New York law, those hospitals subject to [the agreements] clearly may not recover under a theory of unjust enrichment, inasmuch as the valid and enforceable written [agreements] governed the particular subject matter of this case.").

Additionally, a claim for unjust enrichment must specify the manner and extent to which the defendant was unjustly enriched. See, e.g., Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp., 790 N.Y.S.2d 143, 145 (App. Div. 2005) ("[T]he plaintiff's allegation that the appellants received benefits, standing alone, is insufficient to establish a cause of action to

11

recover damages for unjust enrichment."); Nedrich v. Jones, 429 S.E.2d 201, 207 (Va. 1993) ("One may not recover under a theory of implied contract simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit."). The complaint alleges nothing with regard to how the accrued benefits were undeserved or how they were inequitably retained. For all these reasons, plaintiff's claim for unjust enrichment is dismissed.

7. Seventh Claim: Civil Conspiracy

Plaintiff's final claim alleges an "unlawful combination and conspiracy to construct a high cost loan against plaintiff for the purpose of unjustly enriching [defendants]." (Compl. ¶ 38.) She notes that "[a]s a result of the civil conspiracy, civil wrongs were committed against the plaintiffs' and other consumers, not yet named herein." (Compl. ¶ 39.)

"A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." Glass v. Glass, 321 S.E.2d 69, 74 (Va. 1984). Under Virginia law, a claim of civil conspiracy is not a free standing cause of action; it is predicated upon the independent tortious conduct of a defendant. Logically, "without proof of the underlying tort, there can be no conspiracy to commit the tort." Commercial Bus. Sys. v. Halifax Corp., 484 S.E.2d 892, 896 (Va. 1997). "Thus, if Plaintiff's Motion for Judgment fails to state a particular cause of action, then no conspiracy to commit the corresponding cause of action will survive demurrer." Almy v. Grisham, 55 Va. Cir. 401, 404 (Cir. Ct. 2001). New York law is the same in this regard. See Block v. Chassin, 319 N.Y.S.2d 86, 86 (App. Div. 1971) ("With the underpinnings of the substantive alleged tortious conduct dismissed, the charge of conspiracy to effectuate them adds nothing and must also fall."). Accordingly, after dismissing plaintiff's six underlying claims,

this claim for civil conspiracy predicated on the same allegations must also be dismissed.

## CONCLUSION

For the reasons discussed above, the motion to dismiss is granted as to all claims. Plaintiff's complaint is dismissed with leave to replead within 14 days of the date of this order. Plaintiff is cautioned, however, that she should not seek to replead any claims with respect to which she cannot, in good faith, allege all factual matters essential to state a cause of action. If no amended pleading is filed by May 4, 2010, the Clerk of the Court is directed to enter judgment on that date.

SO ORDERED.

/S/
_____
Allyne R. Ross
United States District Judge

Dated: April 19, 2010
Brooklyn, New York